# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     :    CR. NO. 3:23-CR- *125*

      v.                   :

                          :    (Judge *MANNION*)

FRANK TASSIELLO,          :

                          :    (Filed Under Seal)

         Defendant.        :

**FILED**
**SCRANTON**

MAY 22 2023

PER _JKC_
DEPUTY CLERK

## INFORMATION

**THE UNITED STATES ATTORNEY CHARGES:**

### COUNT 1
18 U.S.C. §371
(Conspiracy to Commit Theft of Major Artwork, Concealment and Disposal of Major Artwork, and Interstate Transportation of Stolen Property)

## I.    Introduction

At all times material to the Information:

1.     The Defendant is a resident of the Commonwealth of Pennsylvania.

2.     A "museum" as defined in Title 18, United States Code, Section 668, is an organized and permanent institution, the activities of which affect interstate and foreign commerce, that is (a) situated in the United States; (b) is established for an essentially educational and aesthetic purpose; (3) has a professional staff, and: (4) owns, utilizes, and cares for tangible items that are exhibited to the public on a regular

cares for tangible items that are exhibited to the public on a regular schedule.

3.    An "object of cultural heritage," as defined in Title 18, United States Code, Section 668, is an object that is either over 100 years old and worth in excess of $5,000 or that is less than 100 years old and worth at least $100,000.

4.    The following institutions are all situated in the United States, have been established for essentially educational or aesthetic purposes, have professional staffs, own, utilize, or care for tangible items that are exhibited to the public on a regular schedule, and are "museums" as defined in Title 18, United States, Code, Section 668:

a)    The Space Farms Zoo and Museum located in Wantage, New Jersey;

b)    The Harvard Mineralogical & Geological Museum located in Cambridge, Massachusetts.

5.    The following items are "objects of cultural heritage," as defined in Title 18, United States Code, Section 668, in that they are either over 100 years old and worth in excess of $5,000 or are less than 100 years old and worth at least $100,000:

a)    Colt Model 1839 Revolving Shotgun;

6.     From in or about August of 1999 and continuing through in or about April of 2019, in the Middle District of Pennsylvania, the District of New Jersey, the Southern District of New York, the District of Massachusetts, the District of Rhode Island, and elsewhere, the Defendant,

## FRANK TASSIELLO,

did knowingly, intentionally, and unlawfully combine, conspire, confederate, and agree with others, to commit an offense against the United States, that is: to steal from the care, custody, and control of various museums certain objects of cultural heritage; knowing that certain objects of cultural heritage had been stolen or obtained by fraud, if in fact the object had been stolen or obtained by fraud from the care, custody, or control of a museum, received, concealed, exhibited, or disposed of the objects, and: transported in interstate or foreign commerce goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted, or taken by fraud, in violation of Title 18, United States Code, Section 668(b)(1), Title 18, United States Code, Section 668(b)(2), and Title 18, United States Code, Section 2314.

## II.   Manner and Means and Purpose of the Conspiracy

7.   During the aforementioned period of the time, it was part of the conspiracy for the conspirators to conduct research in order to locate collections which contained valuable pieces of artwork, antiques, sports memorabilia, and other items, many of which constituted objects of cultural heritage.

8.   It was part of the conspiracy that the conspirators made several trips to various institutions, many of which constituted museums, where the above-described objects were displayed, for the purpose of gaining knowledge of security measures, access points, exit points, and the physical displays of the above-described objects.  The conspirators recorded these trips for the purpose of later reviewing the above-described security measures prior to the theft of the objects of cultural heritage.

9.   It was part of the conspiracy that the conspirators visited the museums and other repositories, broke into the museums and other repositories, smashed or destroyed the protective display cases, and stole and removed objects of cultural heritage.

10.   It was part of the conspiracy that the conspirators would meet at various pre-arranged locations to itemize, distribute, and break-down the objects of cultural heritage between the conspirators.  The

conspirators utilized three locations in particular, the residences of two members of the conspiracy, and a bar owned and operated by a third member of the conspiracy, all located in Lackawanna County, Pennsylvania, within the Middle District of Pennsylvania.

11.   It was part of the conspiracy that the conspirators would strip the objects of cultural heritage of the gemstones and other valuable attachments prior to melting the objects down into easily transportable bars, disks, and small pieces of the valuable metals.

12.   It was part of the conspiracy that the conspirators would transport the above-described gemstones and valuable metals to individuals both known and unknown in the Grand Jury, located within New York City, in the Southern District of New York, to sell the objects for cash.

13.   It was part of the conspiracy that the conspirators would sell objects of cultural heritage which could not be broken down, such as antique firearms and paintings, to each other and to various individuals, both known and unknown to the United States Attorney, for cash.

14.   It was part of the conspiracy that the conspirators would transport the above-described antique firearms and paintings to other residences belonging to the conspirators in order to conceal the objects

from law enforcement investigators.

## III.   Overt Acts

15.   In furtherance of the conspiracy and in order to effect the objects thereof, one or more of the conspirators committed and caused to be committed the following overt acts, in the Middle District of Pennsylvania, and elsewhere:

a)   Prior to August 8, 2018, Frank TASSIELLO and another conspirator visited the Space Farms: Zoo & Museum located in Wantage, New Jersey, to view objects of cultural heritage displayed therein and to observe the security measures protecting said objects.

b)   On or about August 8, 2018, Frank TASSIELLO drove another conspirator to the Space Farms: Zoo & Museum with the purpose of breaking into the museum and stealing and removing objects of cultural heritage displayed therein.

c)   On or about August 8, 2018, the conspirator described above in subparagraph (b) entered the Space Farms: Zoo & Museum without authorization and smashed several display cases found therein with an axe.

6

d)  On or about August 8, 2018, the conspirator described above in subparagraph (b) stole and removed an object of cultural heritage, namely a Colt Model 1839 revolving shotgun worth approximately $32,500 from the Space Farms Zoo and Museum.

e)  On or about August 8, 2018, Frank TASSIELLO transported the conspirator described above in subparagraphs (b-d) and the Colt Model 1839 revolving shotgun stolen from the Space Farms Zoo and Museum from Wantage, New Jersey, to Lackawanna County, Pennsylvania.

f)  On or about or after August 8, 2018, the conspirator described above in subparagraphs (b-d) sold the Colt Model 1839 revolving shotgun stolen from the Space Farms Zoo and Museum, described above in subparagraph (d), to another member of the conspiracy.

g)  On or about September 19, 2019, the conspirator described above in subparagraph (f) possessed the Colt Model 1839 revolving shotgun stolen from the Space Farms Zoo and Museum.

h)  On or about October 11, 2018, Frank TASSIELLO drove

another conspirator to the Basic Irish Luxury store located in Newport, Rhode Island, with the purpose of breaking into the store and stealing and removing items displayed for sale therein.

i)   On or about October 11, 2018, the conspirator described above in subparagraph (h) entered the Basic Irish Luxury store without authorization and stole and removed jewelry and other items from the store.

j)   On or about October 11, 2018, Frank TASSIELLO transported the conspirator described above in subparagraphs (h-i) and the items stolen from the Basic Irish Luxury store from Newport, Rhode Island to Lackawanna County, Pennsylvania.

k)   On or about October 11, 2018, the conspirator described above in subparagraphs (h-i) gave Frank TASSIELLO several rings as payment for driving the conspirator to and from the Basic Irish Luxury store.

l)   On or about October 11, 2018, the conspirator described above in subparagraph (h-i) transported the items stolen from the Basic Irish Luxury store to the residence of another conspirator, located in Lackawanna County, Pennsylvania, to

8

melt down the stolen items into easily transportable metal pieces.

m)     On or about October 11, 2018, the conspirator described above in subparagraphs (h-i) took the metal pieces described above in subparagraph (l) to New York City where he exchanged the metal pieces for cash.

n)     Prior to April of 2019, Frank TASSIELLO created a "Hasidic" disguise for another conspirator to wear in a planned theft from the Harvard Mineralogical & Geological Museum in Cambridge, Massachusetts.

o)     Prior to April of 2019, and while inside Frank TASSIELLO's residence in Lackawanna County, Pennsylvania, Frank TASSIELLO dressed the conspirator in the "Hasidic" disguise described above in subparagraph (n).

p)     Prior to April of 2019, the conspirator described above in subparagraphs (n-o) drove to the Harvard Mineralogical & Geological Museum with the intent to steal a mineral or minerals displayed therein, however, upon entering the museum, the conspirator discovered that the mineral or minerals were no longer on display.

All in violation of Title 18, United States Code, Section 371.

THE UNITED STATES ATTORNEY FURTHER ALLEGES:

## FORFEITURE ALLEGATION

16.   The allegations contained in Count 1 of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

17.   Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), upon conviction of the offenses in violation of Title 18, United States Code, Sections 371, the defendant,

## FRANK TASSIELLO,

shall forfeit to the United States of America, any property, real or personal, involved in such offenses, or any property traceable to such property, including but not limited to:

a) Colt Model 1839 Revolving Shotgun

If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C)

and Title 28, United States Code, Section 2461(c).


                                        GERARD M. KARAM
                                        United States Attorney


                                        JAMES M. BUCHANAN
                                        Assistant United States Attorney

Date: _May 4, 2023_____